PROYOSTY, J.
Plaintiff claims that defendant agreed orally to pay him $2,500 if he could induce certain parties to accept a proposition which he, defendant, had made them to sell them his land and timber holdings and' his share of stock in the C. L. Smith Lumber Company for $420,000, and claims, also, that for services rendered and to be rendered by him in connection with a subsequent sale of practically the same property, which had returned into the hands of defendant, defendant orally agreed to pay him $5,000 additional.
Defendant was a timberman of 30 years’ experience in the land and timber business. He was owner of several thousand acres of timberlands and also of the timber on several other thousands of acres in the parishes of Calcasieu and Yernon and the adjoining counties in Texas. He was also owner of a majority of the capital stock of the C. L. Smith Lumber Company, a corporation own *49 iag and operating a large sawmill at Merryville, in the parish of Calcasieu.
He made the proposition to Mr. Carroll, one of the stockholders of the sawmill company, to sell him and the other stockholders his stock in the company as well as all his land and timber holdings for $420,000. Mr. Carroll and his associates were willing to give $415,000, but no more.
Plaintiff testified that, while the negotiations between defendant and Mr. Carroll were pending, he and defendant were together on a train going to Beaumont, and that defendant said to him:
“I’ll tell you what I’ll do. If you will get me $420,000 for it, I will give you $2,500, or half of the increase.”
Defendant denies that he made any such promise.
With a view to meeting one of the defenses, that he could not recover for the reason that he was one of the purchasers, the plaintiff testified, as follows:
“Q. Were you not interested as a purchaser in this proposition? A. I was not. Q. Is it not a fact, Mr. Sanders, that at the time you approached Mr. Carroll on this proposition you proposed to him that, if he would let you in on the deal, you would put up a large sum of money, and that you thought it would be a good deal for you and him to take over? A. It is not a fact. Q. Do you deny that you, John L. Keith, Joe E. Carroll, together with a few small stockholders, bought over C. L. Smith’s interest in the C. L. Smith Lumber Company? A. Ño, sir; I was not. Q. It was not understood as between you and Mr. Carroll that you were going in with him on this deal? A. No, sir; no, sir.”
Now, as a matter of fact, plaintiff was one of the purchasers, and was the largest contributor of cash towards the purchase, as is shown by the following testimony of Mr. Carroll:
“Q. When you used the expression, ‘when we purchased it from C. L. Smith,’ what did you mean? A. I mean W. J. Sanders, John L. Keith, and myself bought C. L. Smith’s interest in the company. * * * Q. Who did you negotiate with first looking to the purchase of this property, I mean you as representative of the C. L. Smith Lumber Company, from C. L. Smith? A. In the first instance we were dealing with Mr. Smith, so far as buying the property was concerned. Q. Did you know Mr. Sanders in the sale? A. No; Mr. Sanders was not interested in the sale. He was interested in the purchase with me. Q. Just explain to me the extent Mr. Sanders was interested in the sale or in the purchase? A. Mr. Sanders was to come into the mill and take stock in it, and, while we were negotiating with Mr. Smith, Sanders went and looked over the timber, and said it looked good to him, and he would like to get it. Q. What was the status of the negotiating between yourself as representative of the C. L. Smith Lumber Company and C. L. Smith before Sanders came into the negotiation? A. Mr. Sanders was in from the start. Mr. Sanders was going to take stock in the company, and Mr. Sanders and Mr. Smith and I comd not agree on the price. Mr. Sanders agreed that we had better take it at Mr. Smith’s price, thought there would be money in it at that price. Q. How long before the consummation of this deal did W. J. Sanders come into the negotiation to the extent of insisting that the C. L. Smith Lumber Company buy this property from C. L. Smith for $420,-000? A. I don’t remember the exact time. There were several of us in the deal, and we would have to take it up and consult, and Mr. Sanders was arguing that we had better not let a little difference break up the deal, that he was going to put more money in it than any of the balance of us and the balance should take his judgment in the matter, as he had looked over the land and timber himself. ® * * A. No. I could not tell how long that was, because, in fact, Mr. Sanders was interested from the start of our negotiation with Mr. Smith. If it had not been for Mr. Sanders coming in, we would not have bought from Mr. Smith at all.”
Cross-examination of Carroll:
“Q. Did I understand you to tell Mr. Hardin that Mr. Sanders was as much a purchaser and nad as much interest as yourself? A. He had a greater interest, because he put more money in it. Q. Mr. Carroll, did Mr. Sanders in his negotiations ever represent to you that he was agent of Mr. C. L. Smith in this deal? A. No, sir; I never suspected that he was. Q. You say that he had a greater interest in the company than you -did? A. He was taking more stock in the new company than I had. Q. Then, Mr. Carroll, you and your associates in taking over this proposition acted on Mr. Sanders’ suggestion from the standpoint of his interest as an associate, and not his interest as the agent of Mr. Smith? A. Yes; we did not know that he was representing Mr. Smith. We thought that he was looking after Ms interest as well as ours. Q. Had his interest in the company — that is, buying out Mr. Smith’s interest — been figured between yourself and other associates? I mean, between you and Mr. Keith and others, had Mr. Sanders been *51 agreed upon? A. Yes; as to the stock he was to take. We had to buy other stockholders besides that of Mr. Smith. Q. Then Mr. W. J. Sanders was interested in this proposition as purchaser from its beginning, was he not? A. Yes, sir; I thought he was as much of a purchaser as I was. Q. Did any one else associated with you, Mr. Keith and Sanders, in the purchase advise you that they thought it would be a good deal to take it at $420,000? A. No, sir; we had all about decided that we would not make the purchase until Mr. Sanders insisted on it.”
Mr. Carroll is an entirely disinterested witness; and is corroborated by the minutes of the C. L. Smith Company, which show that on the 10th of July, three days before the signing of the act of sale, the plaintiff was elected a director of the C. L. Smith Lumber Company.
Neither Mr. Carroll nor plaintiff could possibly have been mistaken in the testimony thus given. The consequence is that plaintiff is entirely discredited as a witness.
The only corroborative evidence he adduces respecting the alleged agreement is the testimony of W. IT. Powell, who says that Smith told him that he had agreed to pay $2,500 to Sanders for his services in representing him, and helping him to sell the property. Powell is himself a suitor for $6,000 upon a similar alleged oral agreement in connection with the same sale. He testified in support of Sanders’ suit; and Sanders testified in support of his. His claim was rejected and that of Sanders must also be, as not supported by sufficient proof.
Now, as to the alleged oral contract for $5,000.
The first sale, namely, that made by defendant to his associate stockholders in the C. L. Smith Lumber Company, was almost entirely on a credit, and very soon the purchasers returned the property to him in payment of the maturing installments of the price. They also gave up to him their stock in the C. L. Smith Company. I-Ie then began to look about for a purchaser for the entire property, and soon effected a sale at $500,000. This he did through the intermediary of a Mr. Newman, to whom he paid a commission of $10,000.
Plaintiff does not pretend to have taken any part in bringing about this sale, but claims that at the solicitation of defendant he had been active, and had incurred considerable expense, in trying to procure a purchaser, and that the understanding with defendant was that defendant would pay him $5,000 whenever a sale should be made, no matter through whom and no matter at what price; defendant’s words being:
“If you sell it, I sell it, or the other fellow sells it, I will absolutely give you $5,000 for what you have already done and what I expect you to do in the deal regardless of price.”
Defendant admits having agreed to give plaintiff a commission of $10,000 if plaintiff procured a purchaser and effected a sale; but denies positively having made the agreement just stated.
The only corroboration plaintiff produces is the following testimony of A. L. Smith (no kin to defendant), the clerk of the commissary store of the sawmill:
“Q. Do you remember hearing a conversation between C. L. Smith and W. J. Sanders in the office of the C. L. Smith Lumber Company? A. It was in the rear end of the store commissary. I was waiting on a customer in the shoe department, and, after finishing with the customer just across the counter, they were standing about 8 or 10 feet, I heard C. L. Smith tell Mr. Sanders that he would go him one better, give 'him $5,000 for what he had already done and what he expected him to do in the future. The sale between C. L. Smith and West was in progress at that time. They were negotiating, consulting about selling his property to West.”
If full credit were giveu to this witness, and the testimony of defendant were eliminated altogether, we should have one uncorroborated witness to support a claim of $5,-000, since the testimony of Sanders has to be disregarded, he having been entirely discredited as a witness, as above stated. Especially is this evidence insufficient in view of the *53 following testimony of Mr. West to whom the sale was made:
“No; I did not have occasion to deal with W. J. Sanders in connection with the purchase. He did talk to me once about the purchase in a general way, but I never knew or understood that he had anything to do with it. ' Except in this way, he took no hand in it so far as I know; and he did nothing to induce me to buy the property.”
Upon neither of the demands has plaintiff, in our opinion, satisfied the requirement that a plaintiff must make his case certain ere he can recover.
The judgment appealed from is set aside, and this suit is dismissed, at plaintiff’s cost.